**UNITED STATES of America, Plaintiff,**

**v.**

**Robert "Robbie" Francis MYERS, Defendant.**

**No. 3:03–CR–147.**

United States District Court, S.D. Iowa.

Jan. 26, 2005.

Clifford R. Cronk, U.S. Attorney's Office, Des Moines, IA, for USA, Plaintiff.

---

Terence L. McAtee, Iowa Federal Public Defender, Davenport, ME, for Robert Myers (1), Defendant.

## MEMORANDUM OPINION
## AND ORDER

PRATT, District Judge.

**"If the 600–plus pages of the most recent set of sentencing guidelines have taught us anything, it is that punishment cannot be reduced to an algorithm."**

-The Hon. Myron H. Thompson, Editorial, *Sentencing and Sensibility*, N.Y. Times, Jan. 21, 2005.

Before the Court is the matter of imposing judgment on the Defendant, Robert Francis Myers. The Supreme Court's decision in *United States v. Booker*, —— U.S. ——, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), made the United States Sentencing Guidelines ("Guidelines") advisory. While a greater degree of discretion has been *returned* to district courts post-*Booker*, that discretion is not unfettered or, perhaps a better word, unmoored. Title 18 United States Code section 3553(a), as the manifestation of Congress' intent, moors district court judges by the mandate to consider specific factors, along with the Guidelines, in determining an appropriate sentence. The following memorandum explains this Court's understanding of the holding in *Booker*, and applies that understanding to the Defendant's sentence in this case. Because they have been sworn to uphold the federal constitution and to apply the law in every case, federal judges owe a duty to the public to explain, in the light of the wisdom gained from other organs of government, how they have arrived at their decisions in applying the law to the facts before them. In the context of criminal judgments, these explanations are a way to show that the tether lines holding sentencing courts to the mooring of Congressional intent, as expressed through federal statute, are still in place—in other words, to show that the law has been served.

## I. INTERPRETATION OF BOOKER

■ In the long anticipated *Booker* decision, the Supreme Court extended its holding in *Blakely v. Washington*, —— U.S. ——, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), finding the Washington sentencing guidelines unconstitutional. As to the federal guidelines, the Supreme Court held that the imposition of a mandatory sentencing system on federal court judges that allowed some defendants to receive a longer prison term on facts found, not by a jury, but by the sentencing judge is unconstitutional. *See Booker*, —— U.S. ——, —— - ——, 125 S.Ct. 738, 749–50, 160 L.Ed.2d 621 (stating that the Court's "conclusion rests on the premise, common to both [the State of Washington and the Federal] systems [that] the relevant sentencing rules are mandatory and impose binding requirements on all sentencing judges"). The Supreme Court's remedy was to make the Guidelines advisory and, in the context of appellate review of sentences, change the standard of review from de novo to that of reasonableness. The Guidelines, of course, are still to be taken seriously when passing judgment after a jury verdict or plea of guilty. "Without the 'mandatory' provision, the [Sentencing Reform] Act nonetheless requires judges to take account of the Guidelines together with other sentencing goals." *Id.* at 764. Already, different interpretations and applications of the *Booker* decision have emerged. In *United States v. Wilson*, Judge Cassell determined that the Guidelines are still presumptive and should only be departed from "in unusual cases for clearly identified and persuasive reasons." 350 F.Supp.2d 910, 911, 2005 WL 78552, at * 1 (D.Utah 2005). Conversely, in a still unpublished opinion, *United States v. Ra-*

*num*, 353 F.Supp.2d 984, 2005 WL 161223 (E.D.Wis.2005), Judge Adelman concluded that the Guidelines are not presumptive, but advisory, and should be treated as one factor to be considered in conjunction with other factors that Congress enumerated in section 3553(a). This Court adopts Judge Adelman's view. To treat the Guidelines as presumptive is to concede the converse, i.e., that any sentence imposed outside the Guideline range would be presumptively unreasonable in the absence of clearly identified reasons. If presumptive, the Guidelines would continue to overshadow the other factors listed in section 3553(a), causing an imbalance in the application of the statute to a particular defendant by making the Guidelines, in effect, still mandatory.

Judge Adeleman rightly points out that, when put side by side, the Guideline provisions and statutory provisions under section 3553(a) often contradict one another. Judge Adelman writes:

> For example, under § 3353(a)(1) a sentencing court must consider the "history and characteristics of the defendant." But under the guidelines, courts are generally forbidden to consider the defendant's age, U.S.S.G. § 5H1.1., his education and vocational skills, § 5H1.2, his mental and emotional condition, § 5H1.3, his physical condition including drug or alcohol dependence, § 5H1.4, his employment record, § 5H1.5, his family ties and responsibilities, § 5H1.6, his socio-economic status, § 5H1.10, his civic and military contributions, § 5H1.11, and his lack of guidance as a youth, § 5H1.12. The guidelines prohibition of considering these factors cannot be squared with the § 3553(a)(1) requirement that the court evaluate the "history and characteristics" of the defendant. The only aspect of a defendant's history that the guidelines permit courts to consider is criminal history. Thus, in cases

in which a defendant's history and character are positive, consideration of all of the § 3553(a) factors might call for a sentence outside the guideline range.

> Further, § 3553(a)(2)(D) requires a sentencing court to evaluate the need to provide the defendant with education, training, treatment or medical care in the most effective manner. This directive might conflict with the guidelines, which in most cases offer only prison. *See* U.S.S.G. § 5C1.1 (describing limited circumstances in which [a] court can impose [a] sentence other than imprisonment). In some cases, a defendant's educational, treatment or medical needs may be better served by a sentence which permits the offender to remain in community.

> In addition, § 3553(a)(7) directs courts to consider "the need to provide restitution to any victims of the offense." In many cases, imposing a sentence of no or only a short period of imprisonment will best accomplish this goal by allowing the defendant to work and pay back the victim. The guidelines do not account for this. In fact, the mandatory guideline regime forbids departures to facilitate restitution. *United States v. Seacott*, 15 F.3d 1380, 1388–89 (7th Cir. 1994).

*Ranum*, 353 F.Supp.2d 987–88, 2005 WL 161223 at *3–4. In citing *Ranum*, this Court does not mean to be unduly harsh about the wisdom contained in the Guidelines, for wisdom is there. Wisdom, however, also resides in the other statutory sentencing factors, but was not allowed expression under the former mandatory scheme. Each of the factors enumerated under § 3553(a) is, in reality, an expression of our society's multiple interests in sentencing an individual. These factors, too, are constantly in conflict. For example, the interest in general deterrence as

described in section 3553(a)(2)(B), a judgment's public warning the consequences of the law will be severe when transgressed, will often be adverse to society's interest in individual deterrence as described in section 3553(a)(2)(C), a judgment's accounting of the circumstances and character of a particular defendant.[1] The Supreme Court recognized that federal judges have "long looked to real conduct" in order to fashion appropriate sentences. *Booker*, — U.S. —, at —, 125 S.Ct. 738, 759–60, 160 L.Ed.2d 621. This is because district court judges are in the unique position to be intimately acquainted with the facts of each case, while also under oath to uphold the federal constitution and laws. By restoring the discretion that judges have to fashion appropriate sentences, the Supreme Court did not establish a revolutionary new power in the district courts. Instead, the Court returned to the judiciary the ability to shape a sentence that "maintain[s] a strong connection between the sentence imposed and the offender's real conduct ...." *Id.* at 756–57. The work of a sentencing court, then, is to evaluate all the interests, as represented by the statutory factors, through careful and patient attention to all parties involved.

This Court views *Booker* as an invitation, not to unmoored decision making, but to the type of careful analysis of the evidence that *should* be considered when depriving a person of his or her liberty. *See Booker*, — U.S. —, at —, 125 S.Ct. 738, 759–60, 160 L.Ed.2d 621 (stating that: "Congress' basic statutory goal—a system that diminishes sentencing disparity—depends for its success upon judicial efforts to determine, and to base punishment upon, the *real conduct*, that underlies the crime of conviction."). Henceforth, this

Court will strive to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes of paragraph 2." 18 U.S.C. § 3553(a). In particular, the Court will assess:

> the need for the sentence imposed -
>
> > (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> >
> > (B) to afford adequate deterrence to criminal conduct;
> >
> > (C) to protect the public from further crimes of the defendant; and
> >
> > (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2). The Court will also examine, as mandatory considerations:

> the nature and circumstances of the offense and the history and characteristics of the defendant; the kinds of sentences available; any pertinent policy statement issued by the Sentencing Commission; the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a)(1), (3), (4)—(7). The Supreme Court characterized the basic statutory role of the sentencing system as the diminishment of disparity in sentencing. *Booker*, — U.S. —, at —, 125 S.Ct. 738, 759–60, 160 L.Ed.2d 621. At first blush, a system of discretionary sentencing would appear to invite what Congress hoped to avoid, unfairness at sen-

---

1. Implicit in the notion of individual deterrence is also a judgment's acknowledgment that the weight of society's need to send a message to potential wrongdoers can only be borne to a limited extent by one individual.

tencing. The Supreme Court in *Booker*, however, reminded judges and the public that true uniformity exists not in a one-size-fits-all scheme, but in "similar relationships between sentence and real conduct." *Id.* at 761. This is the guiding principle at work in *Booker*. This Court will endeavor, then, to square the real conduct presented by the evidence presented concerning a particular defendant, with the public interests expressed through the sentencing statute, in order to deliver a judgment in a manner as even-handed and reasonable as humanly possible.

## II. APPLICATION

### A. *The Nature and Circumstances of the Offense*

■ The Defendant is charged with the unlawful possession of an illegal firearm. *See* 26 U.S.C. §§ 5841, 5861(d), 5871. The facts under consideration in this case are uncontradicted by the parties. In 1974, when the Defendant was fourteen-years-old, he received a shotgun from his parents as a gift. In 2001, the Defendant sold the same gun to his cousin, Mark Edward Myers ("Mark Myers"), for $50.00. Sometime before 2001, the Defendant explained he sawed a portion of the barrel off the shotgun because it was beginning to rust on the end, thereby making it safer to use. In investigating the present case, ATF measured the barrel of the shotgun to be sixteen inches long, with an overall length of the gun being just under twenty-four inches long. Some three years later, on or about November 20, 2004, Mark Myers used the shotgun to bludgeon Gary Lee Otley. Mr. Otley required between twelve to fourteen staples to close the wound.

When asked where he got the shotgun, Mark Myers told police officers about the purchase from his cousin several years earlier. A representative from the Lee County, Iowa, sheriff's office contacted the Defendant and asked him to stop by the sheriff's office. The Defendant readily complied with the request and candidly identified the shotgun as the one he sold his cousin in 2001. No one connected with this case alleges that the Defendant had anything to do with the crimes perpetrated by his cousin, Mark Myers. In fact, the Defendant has lived in an exemplary manner and, up until the events surrounding this case, has never been involved in any type of criminal activity. From those familiar with the Defendant and the events of the gun sale in 2001, the Defendant harbored no criminal intent and likely only sold the gun out of financial need. In fact, according to Mark Myers and the Defendant's aunt, Stephanie Myers, the Defendant thought he had reduced the length of the shotgun barrel to a legal length.

### B. *The History and Characteristics of the Defendant*

As mentioned, the Defendant has no criminal history, aside from three minor traffic violations, before the events described in the present case. On the day of his initial appearance, however, the Defendant was arrested and charged with operating a motor vehicle while intoxicated ("OWI"). Apparently, after learning of the federal indictment and the maximum penalties that he could face (ten years imprisonment), the Defendant became so distraught he consumed too much alcohol. The Defendant has never used illegal drugs. The Probation Officer recounts the facts surrounding the Defendant's OWI arrest under the heading "Justification" in the presentence investigation report. After the arrest, Pre-trial services directed the Defendant to complete a substance abuse evaluation, which the Defendant completed. Following the tests, the Defendant entered a Level I outpatient treatment program that involves AA meetings, group sessions, and individual sessions. The Defendant has appreciated the insight

gained during his treatment, the medical staff has noticed a definite improvement in the Defendant's demeanor, and the Defendant continues his treatment to the present day.

The Defendant is forty-four years old, and was born and raised in rural Iowa. He married Paula Ann Crum in 1980 and they have been married for twenty-four years. The Defendant and his wife have three children together, all daughters. Two are grown and the youngest, who still lives with her parents, is a senior in high school. From all indications, the Defendant is an excellent and loving spouse, father, and role model to his children. His friends and family are uniformly horrified by the prosecution in the present case. The Defendant and his wife both have worked their entire adult lives while raising their children. The Defendant has been intimately involved in the raising of his children, filling in for his wife when she, with his full support, earned her college degree by taking classes in the evening. The letters from each of his daughters describe a man committed to their well-being and happiness.

The Defendant is a high school graduate who has taken some college courses, earning a 3.0 GPA. He has worked consistently since graduation and currently works as a material handler earning an hourly wage. Most of his work experience has been in construction trades, as outlined in the presentence investigation report. Clearly, the family depends on the Defendant's salary to maintain their household and to simply make ends meet. The Defendant has been a steadfast and guiding presence in his family's life. He is known for his upstanding character.

### C. The Need for the Sentence Imposed

The need for the sentence imposed is determined by the seriousness of the offense, promotion of respect for the law, the need for a just punishment, general and individual deterrence, and the needs of the defendant. 18 U.S.C. § 3553(a)(2). There has a been a violation of the law, no matter how unattended by an actual intent to violate the law on behalf of the Defendant. Accordingly, as a matter of general deterrence, the conduct involved should be punished in some fashion. While the plea of guilty to a federal felony may be a small irritation to some defendants, the federal felony conviction admitted to by this Defendant carries great weight. The Defendant has defined himself as a strong role model for personal accountability and responsibility to his children. He has been known for his high moral standards and proven character. The experience of the present prosecution has had a terrible impact on the Defendant and his family. Regardless of sentence, the Defendant will always be described, in part, as a felon— no small punishment for this Defendant. Moreover, there is no danger that this Defendant will commit another crime in the future. He is of no harm to his community and poses no future threat. In fact, any community would be proud to have him as a member and neighbor. In this rare instance, the Court also finds the defendant in no need of rehabilitation through "educational or vocational training ... or other correctional treatment." The Court also notes as especially characterworthy, that the Defendant conceded, on the record, that the force of the indictment's reality and the pre-trial release program helped him to discover his addiction to alcohol. The sentence in this case will, as mandated by law, "be sufficient, but not greater than necessary, to comply with the purposes" with the need for sentence imposed.

### D. The Kinds of Sentences Available and the Guideline Range, Unwarranted Disparities, and Restitution

Given the advisory nature of the Guidelines, a wide range of sentence types are

available to the Court in imposing sentence on this Defendant. That said, the Court adopts the presentence report Guideline findings as to this Defendant: the total adjusted offense level is 17, and the criminal history category is I. The sentencing range, as advised by the Guidelines, is 20–30 months imprisonment.

Fortuitously, the Guidelines, themselves, offer the Defendant some relief under section 5K2.20, which provides that a court could depart from the formerly mandatory sentencing range because the criminal conduct was aberrant behavior. The Guidelines provide these factors to analyze whether a defendant's conduct qualifies as aberrant: 1) whether it was committed without significant planning; 2) was of limited duration; and 3) represents a marked deviation by the defendant from an otherwise law-abiding life. The Defendant has moved the Court to consider section 5K2.20 in imposing judgment. The Government made no objection. The facts are clear that the Defendant shortened the length of the barrel to what he considered a legal length for safety reasons and, then, only sold it to his cousin sometime later out of financial need. While the Defendant owned the shortened shotgun for an unspecified amount of time, the duration factor is not significant in this case. Finally, the Defendant's law-abiding nature is self-evident. The Court finds that the Guidelines, under section 5K2.20, provide an adequate basis for sentencing the defendant well below the original sentencing range.

As to the factors contained in § 3553(a)(6), (7): Any disparity between the sentence imposed in this case and sentences imposed in similar cases, can be explained by the facts in this case. Finally, the statute under which the Defendant is charged does not implicate restitution as a proper remedy.

## III. CONCLUSION

Based on the facts of this case, including, but not limited to, the aberrant nature of the conduct, the law-abiding character of the defendant, the almost innocent circumstances surrounding the shortening of the Defendant's gun, the Defendant's background, the dependence of his family on his income, the lack of any need for rehabilitation on the part of the Defendant, his undergoing significant alcohol evaluation and treatment, the Defendant's immediate compliance with authorities during the investigation, and the Defendant's excellent record during pre-trial release, the Court concludes that a term of imprisonment in this case is completely unwarranted. That said, out of respect for the fact that a violation of federal law has occurred, and to deter others from committing similar acts, the Court sentences the Defendant, Robert Francis Myers, to time served and a three month term of supervised release, the conditions of which are specifically spelled out in the Judgment form. The Court reminds the Defendant that the sentence supervised release in this case "is not an act of leniency ..., but is a substantial restriction of freedom; it is not forgiveness, and it is not an endorsement of the offense." *See State v. Peckenschneider*, 236 N.W.2d 344, 353 (Iowa 1975) (McCormick, J., dissenting).

IT IS SO ORDERED.