**UNITED STATES of America, Plaintiff,**

v.

**Phillip WANNING, Defendant.**

**No. 4:03 CR 3001–1.**

United States District Court, D. Nebraska.

Feb. 3, 2005.

---

**13.** Plaintiff has not asserted a separate claim for a disclosure violation. *See,* 29 U.S.C. § 1132(a)(1)(A), (c).

Steven A. Russell, Assistant United States Attorney, Lincoln, NE, for Plaintiff.

Michael A. Nelson, Hillman, Forman Law Firm, Omaha, NE, for Defendant.

## MEMORANDUM AND ORDER

KOPF, District Judge.

Phillip Wanning (Wanning), who is about 50 years of age, has admitted that he perpetrated a fraud upon two old people. Wanning suffered from alcoholism at the time he committed the crime, but he is "dry" now; recently he had quadruple bypass heart surgery; he has only one criminal history point; he has made arrangements to provide a substantial amount of restitution; and the victims do not request the imposition of a prison sentence. Despite these facts and the Supreme Court decision in *United States v. Booker*, —— U.S. ——, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), on February 1, 2005, I sentenced Wanning to 18 months in prison[1] and I imposed a 3–year period of supervised release.

---

1. With the concurrence of the government, I gave Wanning 120 days before he was required to self-surrender so that he could complete his recuperation. I also recommended to the Bureau of Prisons that initially he be incarcerated at a Medical Center for Federal Prisoners.

The prison sentence was at the low end of the range under the Guidelines and at the high end of the supervised-release range. Based upon the advice of the government, I did not require restitution because the victims are satisfied with the stipulated judgment they received in a lawsuit brought in state court. I did not make Wanning pay a fine because he was broke, the government was not seeking a fine, and it appeared that Wanning has some future obligation to pay some of the restitution and I did not want to frustrate that effort. I also denied Wanning's motions for departure. Those motions were based upon the defendant's poor health and "extraordinary restitution."

I take this opportunity to briefly explain why the Guidelines provide the presumptively reasonable sentence even though they are now advisory in nature. In so doing, I respectfully reject Judge Pratt's [2] views (and others like him) and adopt the contrary views of Judge Cassell. *Compare United States v. Wilson,* 350 F.Supp.2d 910 (D.Utah 2005) (imposing a 188-month Guideline sentence for a bank robbery and according the Guideline range "heavy" weight) (Cassell, J.) *with United States v. Myers,* 353 F.Supp.2d 1026, 2005 WL 165314 (S.D.Iowa 2005) (imposing a 3-month period of probation in a gun case and giving the Guideline range (20 to 30 months) no particular significance) (Pratt, J.).

I also explain why the defendant's motion for departure due to ill health and "extraordinary restitution" should be denied. Those motions should be denied whether viewed under normal departure theory or whether decided under the broadened discretion given federal judges by virtue of the *Booker* decision.

In writing this opinion, I do so with more than a little timidity. I know that the Court of Appeals (and perhaps the Supreme Court) will provide further guidance, and I will, of course, follow that guidance to the extent it conflicts with the views expressed herein.

## I. BACKGROUND

The facts are contained in the presentence report and exhibits received in evidence at the time of sentencing. There were no objections to the exhibits. There were also no objections to the presentence report and the parties agreed that I might take judicial notice of it. Very condensed, the pertinent data is set forth below:

* *The Crime:* Wanning and his former wife took care of two old people. These folks were wealthy. The defendant defrauded them, probably taking about $200,000. There is no evidence that the victims were given poor or inadequate care by the defendant. The defendant was drinking heavily at the time of the crime.

* *The Codefendant:* The defendant's former wife was also charged with this crime, but there are no significant-role reasons for thinking Wanning is less culpable. In fact, the government dismissed the charges against Wanning's former spouse.

* *Personal History and Background:* The defendant was born in 1954. A psychiatrist believes the defendant has a personality disorder. The defendant has only one criminal history

---

**2.** I like and have great respect for Judge Pratt. Nothing I say in this memorandum is intended as a personal criticism of him. I simply (but strongly) disagree with his legal reasoning on this subject. While I take the liberty of using Judge Pratt's decision as an example of a methodology that I think is incorrect, I certainly do not intend to single him out. Indeed, and to be fair, many of my colleagues (Judges Bataillon and Strom, for example) side with Judge Pratt. If I turn out to be wrong, I will buy them all a beer.

point. He graduated high school, has a two-year college degree, and is a certified nursing assistant. He is now divorced. Wanning has one grown son and two adopted children. The adopted children are 20 and 14 years of age. He has not been required to pay child support. While Wanning is apparently off drugs and alcohol now, he has had significant problems with them in the past.

* *Health:* After he was charged and entered a plea of guilty to access-device fraud,[3] the defendant had quadruple bypass surgery in the fall of 2004. He is in generally poor health for this and other reasons. He is having a bit of a problem with retaining fluids in his hands due to the heart surgery, but otherwise he is recovering as planned. According to the probation officer, Wanning did not return a medical release so that the probation officer could independently verify the defendant's health status.

* *Restitution:* After he was charged, the defendant (and his former wife) gave the victims a stipulated judgment that provided that the defendant and his wife would pay or transfer property having a value of more than $89,000. At sentencing, the lawyer for the fiduciary (a bank) that represents the victims wrote the court. She stated that her client "seeks no further restitution" and "does not specifically request that Phillip Wanning serve a prison sentence." (Court's Ex. 1.) One of the

victim's adult children also advised that he hoped "all ... criminal proceedings" would be dropped against Wanning and his wife. (Def's Ex. 103.)

* *Punishment:* For Wanning's crime of conviction, the maximum statutory penalty was 15 years. 18 U.S.C. § 1029(c)(1)(A)(ii). The Guidelines, however, treated him much less harshly. After all was said and done, the total offense level was set at 15, the defendant's criminal history category was set at I, the custodial range was 18 to 24 months, and the supervised release range was 2 to 3 years.

## II. ANALYSIS

I first briefly explain the degree to which the Guidelines should normally guide my sentencing decisions. After explaining this abstraction, I put those principles in practice and explain why the sentence I imposed was "reasonable" and the defendant's motions for a lesser sentence are unavailing.

### A. The Guidelines Provide a Presumptively Reasonable Sentence.

While making the Guidelines "advisory," the Supreme Court stated in *Booker* that sentencing judges were required to consider the Guideline ranges and all other statutory concerns when picking a sentence. *United States v. Booker*, —— U.S. ——, —— – ——, 125 S.Ct. 738, 764–65, 160 L.Ed.2d 621 (2005).[4] As a practical mat-

---

3. 18 U.S.C. § 1029(a)(5).

4. To be precise, the Court said: "The Act nonetheless requires judges to consider the Guidelines 'sentencing range established for ... the applicable category of offense committed by the applicable category of defendant,' § 3553(a)(4), the pertinent Sentencing Commission policy statements, the need to avoid unwarranted sentencing disparities, and the need to provide restitution to victims,

§§ 3553(a)(1), (3), (5)-(7) (main ed. and Supp. 2004). And the Act nonetheless requires judges to impose sentences that reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, protect the public, and effectively provide the defendant with needed educational or vocational training and medical care. § 3553(a)(2) (main ed. and Supp. 2004)." *Id.*

ter, what does that mean when it comes to applying Guideline ranges? I try to answer that question next.

Judge Cassell thought *Booker* meant that the Guidelines, and the ranges they produce, should be given "considerable weight." *Wilson,* at 913–14, 2005 WL 78552, at *3. Judge Pratt, on the other hand, believes that Judge Cassell is incorrect. Judge Pratt (and others who agree with him) would apply relevant portions of the sentencing statutes in a given case, without giving the Guideline ranges any particular weight, in order to arrive at a just sentence. *Myers,* at 1028–29, 2005 WL 165314, at *2–3.

■ In my opinion, Judge Cassell's position—that the Guideline range provides the presumptively reasonable sentence—is correct. I also believe that Judge Pratt's point of view—that, giving the Guideline range no particular weight, a judge should mix and match the statutory purposes of sentencing to arrive at a just sentence—is wrong. Unlike Judge Pratt, I do not believe that one can properly or so easily sever the Guideline range from the statutory purposes of sentencing in most cases.

The Guidelines and their ranges were explicitly crafted by the Sentencing Commission at the direction of Congress to implement the statutory purposes of sentencing. Congress directed the Sentencing Commission "consistent with all pertinent provisions of any Federal statute" to "promulgate ... guidelines ... for use of a sentencing court in determining the sentence to be imposed in a criminal case." 28 U.S.C. § 994(a) (1993 & Cum.Supp.

2004).[5] The Guidelines and the ranges they produced were so important to Congress that it explicitly kept the power to accept or reject the initial Guidelines and it retained the power every year thereafter to reject amendments to the Guidelines. 28 U.S.C. § 994(p)(1993). Obviously, Congress also retained the power to amend the sentencing statutes and control the Sentencing Commission if it thought there was a mismatch between the purposes of sentencing and the Guidelines.[6]

Therefore, when Judge Pratt worries that the Guidelines will "overshadow the other factors listed in section 3553(a)," *Myers,* at 1027–28, 2005 WL 165314, at *1–2, he must assume (because he and others do not explain how it could be otherwise) that Congress and the Commission somehow ignored those provisions of the law when crafting the Guidelines. That assumption is wrong-headed because it assumes that Congress and the Commission have been "asleep at the switch" for more than a decade. While we may not agree with them, we know our elected representatives have not been dozing when it comes to the subject of the Guidelines.

Judge Pratt and others also assert that the Guidelines frequently and directly "conflict" with the statutory goals of sentencing. For example, he bemoans the fact that the Guidelines stipulate that age or health are not ordinarily relevant to picking a particular sentence, but 18 U.S.C. § 3553(a) requires a court to "consider" personal characteristics. *Myers,* at 1028–29, 2005 WL 165314, at *2–3.

Where is the conflict? The Guidelines tell a judge *how* to "consider" age, health,

---

5. An earlier version of the statute required the Commission to issue Guidelines "consistent with all pertinent provisions of this title and title 18." 28 U.S.C. § 994(a) (1993).

6. Perhaps limited only by notions of substantive due process or in cases involving the

death penalty, no one seriously doubts that Congress could set specific sentences for every offense and thereby deprive judges of all discretion. *Booker,* —— U.S. at ——, 125 S.Ct. at 768 (consistent with the Constitution, Congress may pick the "sentencing system" that it "judges best.")

and a myriad other statutorily relevant factors. That, after all, was the express purpose of writing 28 U.S.C. § 994(a), which in turn required the promulgation of the Guidelines. It is not inconsistent for Congress to tell a judge to consider a wide variety of factors when sentencing, while also instructing the judge to follow the Guidelines when determining what weight to give to particular factors. Indeed, Congress created a Commission, partly populated with judges, for the precise purpose of preparing that interpretative guidance.

Simply put, judges cannot reasonably conclude that Congress willfully or negligently allowed Guideline ranges to be implemented that contradicted the statutes that Congress enacted for the purpose of setting sentencing goals. It is more logical, and far more consistent with the proper role of an unelected judge, to presume that those ranges are most often consistent with, and do not contradict, the statutory sentencing goals and factors. If Congress had the rightful power to enact the statutes which articulate the sentencing goals, and if Congress, over a long period of time, both directly and tacitly, approved the Guidelines that seek to implement those goals, how can one reasonably argue that the Guidelines and the ranges they produce should not be given "considerable" weight?

Furthermore, when Judge Pratt expresses the view that reliance upon Guideline ranges must not be allowed to "overshadow" other sentencing goals, *Myers,* at 1027–28, 2005 WL 165314, at *1–2, he really worries that nothing much has changed. He fears the "remedial" opinion in *Booker*

has rendered meaningless the "merits" opinion in *Booker.* There is both a short answer and a longer one to this concern.

The short answer is provided by a question. So what?[7] If nothing much has changed, then that is the result the Supreme Court has chosen. As judges of inferior courts, we are obligated to do as we are told. We are not permitted to pick and choose what portion of the *Booker* opinion to follow.

But, there is also a longer and perhaps more satisfying answer too. The true debate is not whether the Guidelines are advisory—they are, the Supreme Court has said so—and honest district judges know the difference between the old scheme and the new, advisory one. The real question is not whether the Guidelines are advisory, but rather whether judges should, in the exercise of their newly minted discretion, normally follow the Guidelines, and the ranges produced by them, because that approach represents the best (though an imperfect) method of sentencing.

If one does not give the Guidelines "deference," "considerable weight," a "presumption of correctness," or some similar significance, what does one do to harmonize and implement the vaunted statutory goals of sentencing that Judge Pratt and others use, cafeteria style, to do justice? If one reads the decisions of judges who give the Guidelines and their ranges no particular significance ("weight"), one is, sadly, left with the conclusion that well-meaning sentences are now being imposed with little or no coherent organizing principles. One day it may be deterrence (general or specific). Another day it might be

---

7. The evident weakness of the "merits" opinion's Sixth Amendment logic is demonstrated by the alchemy of the "remedial" opinion. Having conflated and equated the words "crime" and "sentence" for Sixth Amendment purposes based upon the "mandatory" nature of the Guidelines, the "merits majority" is hung by its own petard (and the Sixth Amendment concern magically evaporates) through the simple expedient of making the Guidelines advisory.

"just punishment" that catches our fancy. On the third day we may be seen as promoting "respect for the law." Of course, we never want a sentence longer than necessary. And so on, and so on. We end up selecting the sentencing goal(s) of the day (and thus the sentence of the moment) with much the same whimsy and lack of coherence as children picking the flavor of the day at the ice cream shop.

What is really going on here is that we judges think that Congress and the Commission are frequently too harsh. Goodness knows, I believe that. But, no matter how loudly we proclaim that it is not so, the impact of following the "mix-and-match" approach is to return federal sentencing practices to the period before the Guidelines when old white men like me could and did sentence anywhere they wanted so long as they uttered some legal mumbo jumbo. More importantly, such a practice flies in the face of what Congress clearly intended when it adopted a Guideline sentencing scheme. While the Guideline ranges are advisory, there is no good reason to throw the "baby out with the bath water."

In summary, it is easy to pay lip service to the statutory purposes of sentencing when (perhaps subconsciously) we pick a sentence that happens to fit our personal views about crime and punishment. On the other hand, it is frequently unpleasant, but plainly correct, to accord the Guideline ranges the deference that Congress obviously intended. The fact that Guidelines are advisory provides no excuse or reason to do otherwise. On the contrary, the advisory nature of the Guidelines calls us to exercise self-restraint rather than relying upon our own idiosyncratic sense of justice. We may (too) cutely disparage the Guidelines as mere algorithms[8] and thus give them no weight, but if that is our decision, we have no meaningful substitute for the neutrality, coherence, and equality (albeit harsh) that they provide.

## B. When Should the Guideline Range Be Disregarded?

It seems obvious that the Guidelines must be given substantial weight even though they are now advisory. To do otherwise is to thumb our judicial noses at Congress.[9] What is hard, however, is to state a principled basis for imposing a sentence not otherwise called for by the now advisory Guidelines. Given the recency of the new advisory sentencing regime, and my own inadequacies, I do not pretend to have anything but the beginnings of an answer. I have two thoughts though.

First, most cases that truly warrant a sentence different from that called for by the otherwise applicable Guideline ranges can be accommodated by using normal departure theory. We can and should apply that time-tested approach when we believe that the Guideline ranges are too harsh or too lenient. See, e.g., United States v. Yahnke, 395 F.3d 823 (8th Cir.2005) (affirming an upward departure based upon normal departure theory as reasonable under Booker).

8. Myers, at 1027, 2005 WL 165314, at *1 (quoting Judge Thompson).

9. I am all for poking Congress in the eye when such a decision fits within our proper roles as judges. See, e.g., Richard G. Kopf, An Essay on Precedent, Standing Bear, Partial–Birth Abortion and Word Games—A Response to Steve Grasz and Other Conservatives, 35 Creighton L.Rev. 11 (2001). When it comes to sentencing goals, however, it is impossible to assert that judges have any special statutory or constitutional province or professional competence to override the will of Congress in deciding how sentencing goals should normally be harmonized. While sentencing judges know the facts, it is Congress (and its Commission) that has the power and authority, not to mention the Constitutional legitimacy, to determine the broad relevance of those facts.

Second, where normal departure theory is insufficient, we should look to the Guidelines themselves for other suitable sentencing ranges rather than picking a. sentence based upon the ad hoc construction of an amorphous montage of sentencing goals.[10] The need for this approach is most likely to occur when the true offense behavior is not reflected in the indictment and the Guideline range is skewed as a result. In that circumstance, we should look to other Guideline ranges to assist us.

For example, if a case is more nearly a misprision-of-a-felony case rather than a drug-possession case as charged, resort to the Guideline range for misprision rather than the Guideline range for the crime of conviction could be appropriate.[11] Compare U.S.S.G. § 2X4.1 (setting the base offense level for misprision of felony at 9 levels lower than the underlying offense, but in no event less than 4, or more than 19) with U.S.S.G. § 2D1.1(a)(3) (setting the base offense level according to a Drug Quantity Table). By resorting to other Guideline ranges when selecting a sentence, we employ a principled basis for adjusting the sentence to fit the true crime while still retaining the intellectual coherence, predictability, and equality of treatment that the Guidelines and the statutory purposes of sentencing seek to provide.

■ In summary, under the advisory Guideline scheme, a judge should depart from the Guidelines when normal departure theory warrants. The judge should also deviate from the Guidelines when normal departure theory fails but another sentencing range from within the Guidelines more accurately (and honestly) describes the real offense behavior. In most other circumstance, and despite the advisory character of the Guidelines, substantial weight should be given to the ranges produced by customary application of the Guidelines when a judge decides what sentence to impose.

### C. The Sentence Was Reasonable.

■ The sentence in this case was reasonable because it fell within the otherwise applicable advisory Guidelines,[12] substantial or heavy weight should be and was given to the Guidelines, a downward (or for that matter upward) departure under normal departure theory was unwarranted, and there were no other sufficient reasons tendered by the defendant, or found by me, to impose a different sentence.[13]

---

10. For the sake of taxonomy, we might call this a motion for deviation or variance from the Guidelines. We may contrast such a motion with a departure motion which relies upon normal departure theory.

11. For example, consider the case of a "mule" who is merely a helper for another "mule," but who admits to being in constructive possession of a large amount of dope while riding in the first man's car. The real offense conduct in that example might actually be closer to misprision than drug possession. As another example, consider a drug case involving a weapon where the indictment does not also include an 18 U.S.C. § 924(c) gun count requiring a mandatory consecutive sentence on top of the sentence for the underlying drug offense. In that circumstance, one might make a credible argument that the advisory Guideline range for the crime of conviction should be disregarded in favor of a much higher range that mirrors the true offense behavior.

12. To reiterate, the total offense level was 15, the defendant's criminal history category was I, the custodial range was 18 to 24 months, and the supervised release range was to 2 to 3 years. Restitution (or provision for restitution) had been made in a manner satisfactory to the victims. Hence, restitution was not at issue. The sentence was 18 months in prison and a 3–year period of supervised release.

13. To the extent that Booker requires that I recite a mantra—that I considered every statutory goal for sentencing before imposing sentence—I so state. If need be, I can rip

Regarding the defendant's health problems, they were not so serious as to preclude doing time in prison. There is no reason to believe that the Bureau of Prisons cannot adequately care for the defendant. While being sick in prison is harder than not being sick in prison, there is no basis for concluding that Wanning will suffer too much if incarcerated. Moreover, there is no reason to believe that the Bureau of Prisons would be unduly burdened financially or otherwise by caring for the defendant's medical needs. In short, the defendant was a sick man but not so sick that he cannot or should not do time. *Cf. United States v. Rabins*, 63 F.3d 721, 728–29 (8th Cir.1995) (pre-*Booker*; evidence supported finding that defendant's acquired immunodeficiency syndrome (AIDS) or AIDS-related complex did not present extraordinary physical impairment at time of sentencing so as to warrant downward departure from statutory minimum sentence, even assuming sentencing court had authority to grant such departure; although defendant's condition would probably lead to serious physical difficulties and death within period of years, defendant was not taking AIDS medication or requiring special care at time of sentencing), *cert. denied, Johnson v. United States*, 516 U.S. 1153, 116 S.Ct. 1031, 134 L.Ed.2d 109 (1996).

Regarding the defendant's claim that his restitution should exempt him from prison, such an assertion is not persuasive. After the charge, but before sentencing, the defendant paid (or provided for the payment of) a sum that apparently satisfies the victims.[14] To that extent, the goal of restitution is no longer something that I need to worry very much about.

Moreover, there is nothing about Wanning's short prison sentence that will materially interfere with his ability to make agreed-upon but unpaid restitution payments in the relative near future. In sum, paying back what you stole is normally no reason for leniency. *Cf. United States v. O'Malley*, 364 F.3d 974, 981–82 (8th Cir. 2004) (pre-*Booker*; downward departure from the Sentencing Guidelines for defendant convicted of conspiracy to commit bank fraud, mail fraud, and wire fraud was not warranted based upon extraordinary restitution effort; although defendant tendered a check for $459,047.02, the full amount of the restitution, at his sentencing hearing, allowing a departure based on a defendant's economic resources would be contrary to the intent of the Guidelines; voluntary payment of restitution was mitigating circumstance taken into consideration by the acceptance-of-responsibility Guideline).

Accordingly,

IT IS ORDERED that:

1. The court declares that the sentence in this case was reasonable because it fell within the otherwise applicable advisory Guidelines, substantial weight should be and was given to the Guidelines, a downward departure under normal departure theory was unwarranted, and there were no other sufficient reasons tendered by the defendant, or found by the court, to impose a different sentence.

2. The motions for departure (filings 138 & 147), also construed as motions to deviate or vary from the Guidelines, are denied.

those goals from the context of the Guidelines and mix and match them with the best.

**14.** While I attach no particular significance to the point, it appears that the victims substan-

tially compromised their claims to reach a settlement with Wanning. I suppose they did so because they got in settlement everything they were ever likely to get and proof of a precise loss figure would be hard.

3. The Clerk of the Court shall provide the United States Attorney and the Federal Public Defender with a copy of this decision. They are requested to distribute this memorandum to their. colleagues, and in the case of the Defender, to panel attorneys. Of course, this memorandum and order shall also be served on counsel of record in this case.

4. The Court thanks and compliments Michael A. Nelsen, court-appointed defense counsel, for his excellent service to his client and the interests of justice.