UNITED STATES of America,
Plaintiff,

v.

Bryan PEACH, Defendant.

No. C4–04–033.

United States District Court,
D. North Dakota,
Southwestern Division.

Feb. 15, 2005.

Reed Alan Soderstrom, Pringle & Herigstad PC, Minot, ND, for Defendant.

Cameron W. Hayden, U.S. Attorney's Office, Bismarck, ND, for Plaintiff.

## SENTENCING MEMORANDUM

HOVLAND, Chief Judge.

### I. *BACKGROUND*

On February 14, 2005, the Court sentenced the defendant, Bryan James Peach, to 100 months imprisonment following the entry of a plea of guilty to the offense of possession of a firearm and ammunition by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).

The Defendant's plea of guilty was based on a written Plea Agreement filed pursuant to Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure. The parties stipulated that the Defendant would be

sentenced in accordance with the United States Sentencing Guidelines Manual (November 2003). The Defendant stipulated to a base offense level of 24 and to a 4–level upward adjustment pursuant to Section 2K2.1(b)(5) of the Sentencing Guidelines because the firearm was used in connection with a drive-by shooting. *See* Plea Agreement, ¶¶ 11–12. Pursuant to the Plea Agreement, the United States agreed to recommend a 2–level downward adjustment for acceptance of responsibility and an additional 1–level downward adjustment for timely notifying the United States of an intention to enter a guilty plea. *See* Plea Agreement ¶ 15. As a result, the total adjusted offense level was 25, and the Defendant fell within Criminal History Category V. The guideline sentencing range was 100–125 months with a statutory maximum of 120 months. There were no factual disputes or objections raised by either party to the presentence report or the Sentencing Guideline calculations. In this Sentencing Memorandum, the Court will briefly explain its view of *United States v. Booker* and the application of the sentencing principles set forth in the decision.

## II. *POST–BOOKER SENTENCING*

In *United States v. Booker*, 543 U.S. ——, 125 S.Ct. 738, —— L.Ed.2d —— (2005), the Supreme Court held that the federal Sentencing Guidelines violated a defendant's Sixth Amendment right to a jury trial because it allowed judges to make factual findings that could increase prison time. The Supreme Court severed and excised two statutory provisions of the Sentencing Reform Act of 1984 which made the Guidelines mandatory. *See* 18 U.S.C. § 3553(b)(1) and 18 U.S.C. § 3742(e). With these modifications, the Supreme Court said the Sentencing Guidelines must be considered advisory instead of mandatory. However, it is clear under *United States v. Booker* that district courts are to consult and consider the Sentencing Guidelines in addition to the sentencing factors enumerated in 18 U.S.C. § 3553(a). The Supreme Court said, "district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing," subject to review on appeal for "unreasonableness." —— U.S. ——, ——, 125 S.Ct. 738, 767, —— L.Ed.2d ——, ——. As a result, the Sentencing Guidelines, which have shaped criminal sentencing for nearly two decades, remain an important consideration in the sentences imposed in federal court.

18 U.S.C. § 3553(a) requires courts to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2)." 18 U.S.C. § 3553(a)(2) states that such purposes are:

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendants; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

Courts are also directed to consider (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the kinds of sentences available; (3) the need to avoid unwanted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and (4) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(A)(1), (3), (6), (7).

The present ongoing debate throughout the country concerns the weight to be afforded the Sentencing Guidelines in the wake of *United States v. Booker.* For example, in the District of Utah, Judge Cassell has adopted the view that the Sentencing Guidelines should be given "heavy weight" or "considerable weight" and should be followed in all but "the most unusual cases." *United States v. Wilson,* 350 F.Supp.2d 910 (D.Utah 2005). Judge Richard Kopf in the District of Nebraska recently said the Guidelines provide a "presumptively reasonable sentence even though they are now advisory in nature." *United States v. Wanning,* 354 F.Supp.2d 1056 (D.Neb.2005). Judge Kopf expressed the opinion that the Guidelines must be given "substantial weight." *Id.* On the other hand, Judge Adelman in the Eastern District of Wisconsin held that the Sentencing Guidelines are "just one of a number of sentencing factors" to be considered. *United States v. Ranum,* 353 F.Supp.2d 984 (E.D.Wis.2005); *see United States v. Myers,* 353 F.Supp.2d 1026 (S.D.Iowa2005)(imposing a 3–month period of probation in a gun case and finding the Sentencing Guidelines of no particular significance). The debate is ongoing and the case law is rapidly developing at the appellate court level.

The Second Circuit recently held that in order to comply with the district court's duty to "consider" the guidelines:

A judge cannot satisfy this duty by a general reference to the entirety of the Guidelines Manual, followed by a decision to impose a "non-Guidelines sentence." Subsection 3553(a)(4) contemplates consideration of the Guidelines range applicable to the defendant, and subsection 3553(a)(5) contemplates consideration of policy statements issued by the Sentencing Commission, including departure authority. The applicable Guidelines range is normally to be determined in the manner as before Booker/Fanfan.

*United States v. Crosby,* 397 F.3d 103 (2nd Cir.2005).

And the Fourth Circuit held that "[c]onsistent with the remedial scheme set forth in Booker, a district court shall first calculate the range prescribed by the guidelines. Then, the court shall consider that range as well as other relevant factors set forth in the guidelines and those factors set forth in § 3553(a) before imposing the sentence." *United States v. Hughes,* 396 F.3d 374 (4th Cir.2005).

On February 10, 2005, in his prepared testimony before the Subcommittee on Crime, Terrorism, and Homeland Security, Committee on the Judiciary, United States House of Representatives. Judge Ricardo H. Hinojosa, Chair of the United States Sentencing Commission, testified as follows:

The Sentencing Commission firmly believes that sentencing courts should give substantial weight to the Federal Sentencing Guidelines in determining the appropriate sentence to impose, and that Booker should be read as requiring such weight. The Booker sentencing scheme "requires a sentencing court to consider Guidelines ranges, see 18 U.S.C.A. § 3553(a)(a) (Supp.2004), but it permits the court to tailor the sentence in light of other statutory concerns as well, see § 3553(a) (Supp.2004)."

During the process of developing the initial set of guidelines and in refining them throughout the ensuing years, the Sentencing Commission has considered the factors listed at section 3553(a) and cited with approval in *Booker.* The Sentencing Reform Act, in fact, mandates such consideration by the Sentencing Commission. Section 991(b) of title 28, United States Code, expressly states that the very purposes of the

Sentencing Commission are, among other things: to assure the purposes of sentencing, as set forth in section 3353(a)(2), are met; to provide certainty and fairness in sentencing; to avoid unwarranted disparities among defendants with similar records who have been found guilty of similar conduct; and to maintain sufficient flexibility to permit individualized sentences when warranted. In short, the factors the Sentencing Commission has been required to consider in developing the Sentencing Guidelines are a virtual mirror image of the factors sentencing courts are required to consider pursuant to 18 U.S.C. § 3553(a) and the *Booker* decision. As a result, *sentencing courts should give the guidelines substantial weight.*

Hearing before the Subcommittee on Crime, Terrorism, and Homeland Security, Commission on the Judiciary 109th Cong. (2005) (statement of Judge Ricardo H. Hinojosa, Chair of the United States Sentencing Commission). (emphasis added)

It is important to note that early data from the Sentencing Commission suggests that most federal judges continue to follow the Guidelines. On February 10, 2005, Judge Hinojosa reported to the Judiciary Committee that the Sentencing Commission had received and analyzed documents for 733 sentencings in federal court in the three weeks since the *Booker* decision was handed down [1]. The Sentencing Commission found that the percentage of cases sentenced within the Guideline range post-*Booker* does not appear to differ from the past practice in district courts. The Commission found that approximately 64% of the sentences fell within the Guideline range which is roughly the same percentage as when the Guidelines were mandatory. The Commission found that one-third

of the recent cases (33.4%) were sentenced below the Guideline sentencing range which is also consistent with data collected when the Guidelines were mandatory. The majority of the sentences that fell below the Guideline range were based on an agreement with the Government, i.e., a substantial assistance motion made by the Government under Section 5K1.1 (substantial assistance), an early disposition or fast track motion made by the Government under Section 5K3.1 (early disposition programs), or pursuant to a plea agreement. Judge Hinojosa also noted that recent sentences imposed reveal an increase in the upward departure rate since *Booker*. The most recent data compiled reveals that 2.7% of the total sentences since *Booker* have involved an upward departure—or about a three-fold increase above the average stiffer sentence rate of 0.7% for fiscal years 2000–2002 under the mandatory guideline system. *See* Prepared Testimony of Judge Ricardo H. Hinojosa, February 10, 2005, pp. 6–7. In conclusion, Judge Hinojosa said that preliminary data compiled by the Sentencing Commission, since the *Booker* decision was issued on January 12, 2005, reveals that federal district courts are sentencing pursuant to the Sentencing Guidelines in the "overwhelming majority of cases." *Id.*

 This Court is of the opinion that the proper methodology for sentencing in the post-*Booker* environment is that federal district courts should give the Sentencing Guidelines "substantial weight" and the Guideline range for sentencing as established by the Sentencing Commission provides a presumptively "reasonable" sentence for district courts to follow. This is in accord with the very recent pronouncement of the United States Sentenc-

---

1. Approximately 5000 defendants are sentenced each month nationwide at the federal level.

ing Commission as well as the pronouncement of my colleague, Judge Richard Kopf in Nebraska.

This Court will continue to give consideration to the "advisory" Sentencing Guidelines which will be afforded "substantial weight" in sentencing hearings. The federal Sentencing Guidelines, policy statements, and the sentencing tables and ranges were created at the direction of Congress. The statutory purposes of sentencing, as directed by Congress, are best reflected in the Guidelines. This Court in imposing a sentence will give careful and thoughtful consideration to the Sentencing Guidelines, the applicable policy statements, the guideline range for sentencing, and all relevant factors as enumerated in 18 U.S.C. § 3553(a). Although the Sentencing Guidelines are now considered to be "advisory" rather than mandatory, the Court believes the Guidelines are presumptively reasonable and carry "substantial weight" in determining an appropriate and reasonable sentence. Under *Booker*, a sentence can be reversed if it is "unreasonable" and the passage of time will tell how that standard will evolve.

### III. *SENTENCING GUIDELINE/18 U.S.C. § 3553(a) FACTORS*

As previously noted, at the sentencing hearing on February 14, 2005, the Court adopted the factual findings and Sentencing Guideline calculations as set forth in the presentence report which established a total adjusted offense level of 25 and a Criminal History Category V. The Guidelines provide for a period of imprisonment ranging from 100–125 months and a period of supervised release ranging from two to three years. There is a statutory maximum of 120 months or ten years imprisonment. Neither party objected to the PSR or the Guideline calculations. The Court sentenced the Defendant to a term of 100 months imprisonment.

The Court has carefully considered the factors enumerated in 18 U.S.C. § 3553(a). The Court is required to consider the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense. 18 U.S.C. § 3553(a)(2)(A). These factors weigh heavily towards imposing a lengthy sentence. This was a serious, drive-by shooting that occurred on or about April 17, 2004, when the Defendant was intoxicated and upset with his girlfriend after an evening of drinking. The Defendant was looking for his girlfriend and thought family members or others were hiding her in homes in the Dunseith area. The Defendant used a .308 rifle to shoot at homes in the North Dunseith Housing Complex while he was in his car. Following the drive-by shootings, the Defendant led law enforcement officers on a high speed chase and he managed to escape that evening. Fortunately, no one was injured by the drive-by shootings or the high speed chase. However, this was a serious felony offense which justifies a lengthy period of incarceration. And, when careful consideration is given to the need to provide adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant, a lengthy period of incarceration is justified. *See* 18 U.S.C. § 3553(a)(2)(B) and (C).

The Court has considered the nature and circumstances of the offense as well as the history and characteristics of the Defendant. *See* 18 U.S.C. § 3553(a)(1). The factors set forth in the PSR establish that the Defendant has had a troubled criminal history but he is also a young man who is intelligent (scored a 29 on his ACT exam), and has demonstrated a strong work ethic and the capacity to live a law-abiding lifestyle.

Finally, the Court has also considered the need to avoid unwarranted sen-

tencing disparities (*see* 18 U.S.C. § 3553(a)(6)) and concludes that the advisory sentence range called for by the Guidelines (100–125 months) is a reasonable sentence which satisfies the statutory purposes of sentencing as required under 18 U.S.C. § 3553(a).

In conclusion, the Court has carefully considered the Sentencing Guidelines and the factors enumerated in 18 U.S.C. § 3553(a) in imposing an appropriate and reasonable sentence. The Sentencing Guidelines provide for a range of 100–125 months with a statutory maximum of 120 months. As required by *United States v. Booker*, the Court has given consideration to the "advisory" Sentencing Guidelines and believes that a sentence of 100 months for the egregious and life-threatening conduct that occurred in April 2004 is more than reasonable. For the above-stated reasons, as well as those set forth in detail on the record at the sentencing hearing conducted on February 14, 2005, a sentence of 100 months is appropriate and satisfies the statutory purposes of sentencing as set forth in 18 U.S.C. § 3553(a).

**IT IS SO ORDERED.**